UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RACHEL F.,[1]

                               Plaintiff                    DECISION and ORDER

-vs-

                                                                   1:21-CV-00324 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Supplemental Security Income ("SSI") benefits. Now before the Court is Plaintiff's motion (ECF No. 5) for judgment on the pleadings and Defendant's cross-motion (ECF No. 6) for the same relief. For the reasons discussed below, Plaintiff's application is granted, and Defendant's application is denied.

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence,

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[2] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[3]

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West). Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are

---

[2] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[3] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or by taking testimony from a vocational expert. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773. Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal

3

quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

Plaintiff's claim in this action relates solely to the fifth step of the five-step sequential evaluation. Plaintiff does not challenge the ALJ's findings at the preceding steps, including the finding that Plaintiff had the RFC to perform sedentary work with some postural limitations. In particular, the ALJ found that Plaintiff could not perform more than "occasional" overhead reaching with both arms, but that she was not limited in performing other types of reaching.

At the fifth step of the sequential evaluation, the ALJ found, purportedly based on testimony from a vocational expert ("VE"), that with the subject RFC Plaintiff could still perform

three jobs in the national economy. The VE's actual testimony on that point, in response to questions from the ALJ, was as follows:

> Q Okay. Ms. Vause, I have a few hypotheticals in mind.
>
> A Okay.
>
> Q Bear with me one second. All right. The individual can perform sedentary work. The individual cannot climb ladders, ropes, scaffolds, or crawl. The individual can climb ramps and stairs, balance, bend, stoop, kneel, and crouch on an occasional basis, okay?
>
> A Yes.
>
> Q And that concludes the first hypothetical. Did you get it all? Do you want me to repeat any of it?
>
> A No. I'm all set.
>
> Q Thank you. All right. Well, there's no past relevant work since that's light. Would there be any jobs in the national economy for an individual same profile as here who is in possession of this residual functional capacity?
>
> A Yes.
>
> Q Okay.
>
> A I can give you three examples. First job, document preparer, 249.587-018, exertion sedentary, SVP: 2, employment numbers for this DOT code nationally 18,988. Next, callout operator, 237.367-014, exertion is sedentary, SVP: 2, employment numbers for this DOT code 2,973. Next is cutter and paster, 249.587-014, exertion sedentary, SVP: 2, employment numbers for this DOT code nationally 11,789.
>
> Q Okay. So, those are three jobs you cited?
>
> A Yes.

Q All sedentary, and I believe they had SVP: 2's?

A Correct.

Q Okay. Thank you. Here's hypothetical two. Hypothetical two is hypothetical one, add this limit as well, the individual can reach overhead with both arms occasionally, on an occasional basis, okay?

A Yes.

Q Okay. If you were to add that limitation to hypothetical one, would the jobs you cited from hypothetical one still be viable?

A Yes.

Q All right. Would there be any reduction in their numbers?

A No.

Q All right. Here's hypothetical three. The individual can reach in all directions including overhead with both arms on an occasional basis, okay?

A Yes.

Q Bear with me. Would the jobs you cited from hypothetical one still be viable if you were to amend the reaching limit that way?

A Callout operator would remain applicable.

Q All right. Would there be any other jobs in the national economy that that individual could perform?

A There would only be one other sedentary job I could provide.

Q Okay. So, you could only cite two jobs?

A Correct.

> Q Okay. Thank you. Okay. Has your testimony been consistent with the DOT [(Dictionary of Occupational Titles)]?
>
> A Yes. However, the DOT does not -- it does not define reaching in terms of overhead.
>
> Q Okay.
>
> A That is based in my -- that is based upon my 30 years of work experience as a vocational rehabilitation counselor and how I understand the --
>
> Q Okay.
>
> A -- jobs to be performed.
>
> Q And so, the jobs you cited from hypo one are consistent with the DOT. But the jobs you cited from hypo two and the only two jobs you were able to cite from hypo three are based upon your professional knowledge and experience?
>
> A Correct.
>
> ALJ: Okay. Thank you.

(Tr. 71-73).

Subsequently, in the ALJ's decision denying Plaintiff's application for SSI benefits, the ALJ stated, concerning the VE's testimony, that,

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.  The vocational expert testified that the D.O.T. does not define reaching in terms of overhead.  Accordingly, her testimony regarding this limitation is based on her professional knowledge and experience.

(Tr. 37).

In this action, as discussed further below, Plaintiff maintains that the ALJ erred by "failing

7

to reconcile apparent conflicts" between the RFC and the VE's testimony, concerning the reaching requirements of the three jobs mentioned earlier:

> The ALJ's step five finding was unsupported by substantial evidence because two of the three jobs identified at step five conflicted with the DOT and the ALJ failed to reconcile that conflict. The RFC permitted only occasional overhead reaching, yet two of the three jobs testified to by the VE required frequent reaching. The single remaining job exists in such small numbers (2,973 jobs nationally) that it cannot serve as a basis to show that Plaintiff can perform work that exists in significant numbers in the national economy.

ECF No. 5-1 at p. 5. In support of this argument, Plaintiff relies primarily on two district court decisions, *Yeomas v. Commissioner*, 18-CV-6537S, 2019 WL 6799008 (W.D.N.Y. Dec. 12, 2019) ("*Yeomas*") and *Inoa v. Berryhill*, 18-CV-163 (JPO), 2019 WL 1407487 (S.D.N.Y. Mar. 28, 2019) ("*Inoa*").

Defendant disputes Plaintiff's first argument and contends that the ALJ properly reconciled any conflict between the DOT and the VE's testimony, and that the VE testified, based on her experience, that a person with Plaintiff's RFC as found by the ALJ, and able to reach overhead only occasionally, could nevertheless perform all three jobs that she identified. For supporting caselaw, Defendant relies primarily on *Alisa O. v. Commissioner*, 20-CV-00564 (FPG), 2021 WL 3861425 (W.D.N.Y. Aug. 30, 2021) ("*Alisa O.*"). On the purported strength of that showing, Defendant essentially deems it unnecessary to respond to Plaintiff's second argument.[4]

The Court has carefully reviewed and considered the parties' submissions.

---

[4] *See*, ECF No. 6-1 ("[A]s discussed above, there was no unresolved inconsistency between the vocational expert's testimony and the DOT and, therefore, the document preparer and cutter-and-paster jobs are still valid. In the aggregate, there are a significant number of jobs that plaintiff could do.").

DISCUSSION

Plaintiff first maintains that the ALJ erred by failing to reconcile potential conflicts between the DOT and the VE's testimony, concerning the reaching requirements of the three jobs identified by the VE. Plaintiff contends, therefore, that the ALJ's finding that Plaintiff could perform two of those jobs is not supported by substantial evidence. Secondly, Plaintiff asserts that although Plaintiff could still perform the one remaining job (Callout Operator) even with a limitation to only occasional overhead reaching, such job does not exist in sufficient numbers to support the ALJ's finding that Plaintiff was not disabled. The Court agrees with Plaintiff's first argument, and Defendant has not opposed Plaintiff's second argument. Accordingly, the Court will remand the matter to the Commissioner for further administrative proceedings.

Of course, Plaintiff is correct that ALJ's are required to resolve possible conflicts between the DOT and a VE's testimony, and that where the ALJ does not do so, the VE's testimony will not amount to substantial evidence in support of the ALJ's finding. On this point, the Second Circuit has stated:

> A 2000 Social Security Administration Policy Interpretation Ruling (the "Ruling") governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations. Under the Ruling, the Commissioner "rel[ies] primarily on the [Dictionary] ... for information about the [job's] requirements" but "may also use [vocational experts] ... to resolve complex vocational issues." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). If the Commissioner does consider the testimony of such experts, however, she must be alert to the possibility of "apparent unresolved conflict[s]" between the testimony and the Dictionary. *Id*. In light of this possibility, the Ruling tasks the Commissioner with "an affirmative responsibility to ask about any possible conflict," *id*. at *4, and to "elicit a reasonable explanation for [any such] conflict before relying on the [vocational expert's testimony]," *id*. at *2.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91, 92 (2d Cir. 2019) ("*Lockwood*")

(emphasis in original, footnote omitted).

Just as in the instant case, *Lockwood* involved an apparent conflict between the DOT and a VE's testimony concerning whether a hypothetical claimant with an inability to reach overhead could perform a particular job that the DOT described as requiring "reaching." At the administrative hearing in *Lockwood*, a VE testified that the claimant could perform various jobs despite the limitation on overhead reaching, even though the DOT indicated that the jobs required "reaching." The VE indicated that her testimony was consistent with the DOT, except in certain respects that did not pertain to reaching, and that she was familiar with how the jobs she had identified were actually performed, based on her own experience.[5]

The ALJ in *Lockwood* accepted the VE's testimony without specifically asking her about the potential conflict between her testimony and the DOT as to the reaching requirements of the jobs she had identified. In ruling that the ALJ had erred in that regard, the Circuit Court stated:

> Ruling [SSR 00-4p] mandates that whenever the Commissioner intends to "rely[ ] on [a] vocational expert's testimony," she must identify and inquire into all those areas "where the expert's testimony *seems to* ... conflict with the Dictionary." *Pearson v. Colvin,* 810 F.3d 204, 209 (4th Cir. 2015) (emphasis added). In other words, the Ruling requires the Commissioner to "obtain a reasonable explanation" for any "*apparent*"—even if non-obvious—conflict between the Dictionary and a vocational expert's testimony. SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). In both the 1985 Policy Statement and common usage, "reaching" includes overhead reaching. *Cf. Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013) (per curiam) (suggesting that the inability to reach above one's head may be inconsistent with a job that requires reaching). Testimony that a claimant with overhead reaching limitations is capable of performing a job that the Dictionary describes as requiring "reaching," then, creates at least an apparent conflict that

---

[5] *See, Lockwood v. Comm'r of Soc. Sec.*, No. 6:16-CV-0648 (CFH), 2017 WL 2656194, at *5 (N.D.N.Y. June 20, 2017), ("When questioned specifically whether her testimony had been consistent with the D.O.T., the vocational expert answered, '[i]t is, but the D.O.T. does not address the changing positions and the narrowing these jobs to, first of all best work positions which could be performed briefly while standing and also other jobs that I've observed that one can perform during a change of position without stopping performing the task.'"), *rev'd and remanded sub nom. Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87 (2d Cir. 2019).

10

triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony. *See, e.g., Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (describing such testimony as raising "exactly the sort of inconsistency the [Commissioner] should ... resolve[ ]"); *see also Pearson*, 810 F.3d at 210–11 (similar); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632–33 (8th Cir. 2014) (similar).

The Commissioner's arguments to the contrary do not persuade us. First, she suggests that there is no conflict between the expert testimony and the Dictionary because describing a job as requiring "reaching" does not necessarily establish that it requires overhead reaching. *See Gutierrez v. Colvin*, 844 F.3d 804, 808–09 (9th Cir. 2016); *see also Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) ("[E]ven a job requiring frequent reaching does not necessarily require more than occasional overhead reaching." (emphasis in original)). But while "this Court could guess" what the three jobs [the VE] identified "require in reality, it [was] the [Commissioner's] duty to elicit an explanation from [the VE] as to whether th[ose] occupations actually require ... overhead reaching." *Spears v. Colvin*, No. 15-CV-6236, 2016 WL 4973890, at *5 (W.D.N.Y. Sept. 19, 2016). The importance of teasing out such details is precisely why the Commissioner bears an "affirmative responsibility" to ask about "any possible conflict between [vocational expert] evidence and information provided in the [Dictionary]." SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added). Absent such an inquiry, the Commissioner lacks a substantial basis for concluding that no such conflicts in fact exist. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1366 (11th Cir. 2018) ("We take the word 'apparent' [as used in the Ruling] to mean 'seeming real or true, but not necessarily so.'" (*quoting Pearson*, 810 F.3d at 209)).

Second, the Commissioner contends that the Dictionary's narrative descriptions of the three jobs at issue contain no express reference to overhead reaching. Thus, the Commissioner invites us to disregard the apparent conflict between [the VE's] testimony and the physical requirements enumerated in the Dictionary's occupational descriptions. *See Burgess v. Colvin*, No. 13-CV-6177, 2014 WL 1875360, at *13 (W.D.N.Y. May 9, 2014) (consulting the narrative descriptions of certain jobs requiring "reaching" to conclude that the jobs are consistent with an overhead-reaching limitation). This argument, though, fails for essentially the reasons given above. While the Dictionary's narrative descriptions certainly make it conceivable that the three jobs [the VE] identified do not require overhead reaching, the Commissioner bore the burden of showing that Lockwood is actually capable of performing those jobs. *See Poupore*, 566 F.3d at 306. If the

11

> Commissioner wished to rely on [the VE's] expert testimony to carry that burden, the Ruling makes clear that she was obliged to identify and resolve the apparent conflict between that testimony and the Dictionary, even if there is a chance that, upon inquiry, no actual conflict would have emerged.
>
> Third and finally, the Commissioner argues that even if—as we have now concluded—the apparent conflict between [the VE's] testimony and the Dictionary triggered her duty to probe further, the ALJ adequately carried out that duty. After [the VE] had identified three jobs that, in her view, a person with Lockwood's limitations could perform, the ALJ asked whether this opinion "was consistent with [the Dictionary]." R. 41. [The VE] replied, in relevant part, "It is." *Id*. According to the Commissioner, this exchange operated to resolve any apparent conflict.
>
> We disagree. As the Eleventh Circuit has recently explained, the Commissioner's duty "to identify and resolve apparent conflicts between [the Dictionary] and [vocational expert] testimony ... is not fulfilled simply by taking the [vocational expert] at his word that his testimony comports with the [Dictionary] when the record reveals an apparent conflict." *Washington*, 906 F.3d at 1362. Rather, the Ruling places the onus on the Commissioner, acting through her ALJs, to affirmatively "[i]dentify" any conflicts. SSR 00-4p, 2000 WL 1898704, at *1. Allowing the Commissioner to fulfill this obligation through "catch-all question[s]" like the one the ALJ posed during Lockwood's hearing would essentially shunt the Commissioner's "duty to identify, explain and resolve" apparent conflicts onto the testifying expert. *Patti v. Colvin*, No. 13-CV-1123, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015). Particularly in light of "[t]he inquisitorial nature of disability hearings"—in which claimants often appear *pro se*—we agree with the Eleventh Circuit that the Ruling must be read to "impose[ ] an independent, affirmative obligation on the part of the ALJ to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [vocational expert] if there is one." *Washington*, 906 F.3d at 1364.
>
> In the end, the Commissioner failed to reconcile [the VE's] testimony that a person with an overhead reaching limitation can perform the three jobs at issue here with the Dictionary's indication that all three jobs require "reaching." [The VE's] testimony cannot, then, represent substantial evidence capable of demonstrating that Lockwood can successfully perform work in the national economy.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d at 92-94.

In this action, Plaintiff contends that just as in *Lockwood*, the ALJ in her case erred, since, "The VE never testified about what type of reaching would be required and/or how Plaintiff would be able to perform it; and the ALJ never expressly recognized the conflict." ECF No. 5-1 at p. 7; *see also, id*. ("[There was] an apparent conflict between two of the jobs and the ALJ's limitation to occasional overhead reaching. The ALJ did not reconcile this conflict."). Further, according to Plaintiff,

> the ALJ and VE should have addressed exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements. Here, the ALJ elicited no such testimony.

*Id*.

Defendant disagrees, and maintains that the ALJ did exactly what he was required to do by *Lockwood*: "A review of the hearing transcript reveals that the ALJ did, in fact, probe into the apparent conflicts between the VE's testimony and the DOT regarding reaching, and was able to ascertain a reasonable explanation from the VE." ECF NO. 6-1 at pp. 7-8. More specifically, Defendant states:

> Here, the ALJ undertook such a meaningful investigatory review. The ALJ posed three hypothetical questions to the VE (Tr. 71). In the first hypothetical, the ALJ included no limitation in reaching (Tr. 71). In the second hypothetical (the hypothetical that corresponded to the RFC finding in the decision), the ALJ restricted plaintiff to work that required reaching overhead only occasionally (Tr. 72). In a third hypothetical, the ALJ restricted plaintiff to occasionally reaching in all directions, including overhead (Tr. 71-72). The ALJ did so because, as courts in this district have recognized, there could be a distinction between overhead reaching and reaching in other directions. *See Burgess v. Colvin*, No. 13-CV-6177 (MAT), 2014 WL 1875360, *13 (W.D.N.Y. May 9, 2014) (noting difference between overhead reaching and reaching in other directions); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 319 (W.D.N.Y. 2013) (noting vocational testimony that the DOT mentions reaching, but not overhead reaching); *Sova v. Colvin*, 7:13-CV-0570, 2014 WL 4744675, at *8 (N.D.N.Y. Sept. 23, 2014) (noting that in sedentary work,

13

overhead reaching is rare, unlike other types of reaching).

In response to the first and second hypothetical, the vocational expert identified three jobs that the hypothetical individual could do, two of which required frequent reaching under the DOT and one of which required occasional reaching (Tr. 71-72). *See* DOT 249.587-018, 1991 WL 672439 (document preparer job requires frequent reaching); *see* DOT 249.587-014, 1991 WL 672348 (cutter-and-paster jobs requires frequent reaching); *see* DOT 237.367-014, 1991 WL 672186 (call out operator requires only occasional reaching). The ALJ asked the vocational expert whether her testimony was consistent with the DOT (Tr. 73). Unlike in *Lockwood*, the vocational expert responded that her testimony was consistent with the DOT, except she explicitly specified that the DOT does not define reaching in terms of overhead reaching (Tr. 73). The VE explained that she based her testimony, that the jobs did not require more than occasional overhead-reaching, on her 30 years of experience as a vocational rehabilitation counselor and on her understanding of how the three jobs are performed (Tr. 73). At the hearing, the ALJ summarized the vocational expert's testimony as follows:

> ALJ: And so, the jobs you cited from hypo one are consistent with the DOT. But the jobs you cited from hypo two and the only three jobs you cited from hypo three are based upon your professional knowledge and experience?
>
> VE: Correct

(Tr. 73). Then, in the decision, the ALJ explained that he considered the vocational expert's testimony, in accordance with SSR 00-4p (Tr. 37). The ALJ aptly explained that the vocational expert testified that the DOT does not define reaching in terms of overhead reaching, and that her testimony regarding the reaching limitation was based upon her professional knowledge and experience of how the jobs are performed (Tr. 37). Having elicited a reasonable explanation for the apparent conflict, the ALJ accepted the vocational expert's testimony (Tr. 37-38).

ECF No. 6-1 at pp. 8-9.

Having carefully considered the parties' competing arguments, the Court agrees with Plaintiff and disagrees with Defendant. As set forth earlier, *Lockwood* requires an ALJ to identify and inquire into all those areas where the expert's testimony seems to conflict with the

DOT, and to then explain how he resolved the apparent conflict.   Here, the ALJ did not do any of those things.   To begin with, the ALJ never identified the potential conflict between the VE's testimony and the DOT.   Moreover, the ALJ never mentioned the fact that two of the three jobs identified by the VE required frequent reaching, or that the DOT uses the term reaching without differentiating between different ways of reaching.   Nor did the ALJ ask the VE to explain how the hypothetical claimant could perform jobs requiring frequent reaching if the claimant were limited to only occasional overhead reaching.

Rather, the ALJ merely asked the VE whether her testimony was consistent with the DOT, and the VE responded by asserting that it was, except that "the DOT does not -- it does not define reaching in terms of overhead."   The VE's answer is ambiguous, since it could mean either that the DOT excludes overhead reaching from its definition of "reaching" generally; or that the DOT definition simply does not mention the word "overhead" in its definition of reaching but possibly mentions other types of reaching; or that the DOT's definition of "reaching" simply does not differentiate between any of the various ways of reaching.   Presumably, the VE meant to indicate that the DOT's definition of reaching does not differentiate between different types of reaching, but she did not clearly express that thought, and the Court cannot say whether that is what the ALJ understood her to mean.   Indeed, judging solely from the transcript and the ALJ's decision, it could also be that the ALJ incorrectly understood the VE to mean that her testimony was consistent with the DOT because the DOT's definition of reaching does not include overhead reaching.

In any event, the burden of addressing these issues was on the ALJ, not the VE, and the ALJ did not address the potential conflict as required by *Lockwood*. *See, Inoa*, 2019 WL 1407487, at *4 ("An ALJ's failure to comply with each of these steps can constitute an

15

independent ground for remand. *Lockwood*, 914 F.3d at 94"); *see also, Yeomas*, 2019 WL 6799008, at *4, 5 (W.D.N.Y. Dec. 12, 2019) ("The VE did not offer any explanation of how a limitation to "occasional reaching" is consistent with the frequent reaching criterion in the cited DOT job descriptions and the ALJ did not ask for one. . . . The VE offered no information about the reaching requirements of the identified jobs as they are actually performed, nor did she delve into the DOTs narrative descriptions to identify some difference between overhead reaching and other types of reaching. Despite the lack of explanation about how a similarly-situated person with an overhead reaching limitation could perform those jobs, the ALJ did not ask any questions."); *and compare, Reilly v. Comm'r of Soc. Sec.*, No. 21-8-CV, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022) ("[F]or both potential conflicts Reilly identifies—her ability to reach overhead and her ability to stand and walk—the ALJ "elicit[ed] an explanation that would justify crediting the [vocational expert's] testimony." *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019). The ALJ specifically asked about both potential conflicts and the vocational expert provided explanations that included an analysis based on his own expertise and labor market surveys he conducted. *See* Certified Administrative Record at 84–87. Accordingly, the ALJ properly relied on the vocational expert's testimony. *See McIntyre*, 758 F.3d at 152.").

Based on the discussion above, the Court finds that the Commissioner's step-five determination is not supported by substantial evidence.  However, the Court also finds that remand solely for calculation of benefits is not warranted since the present record does not necessarily contain such "persuasive proof of disability" that no purpose would be served by remanding for further proceedings. *See, Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 263 (2d Cir. 2021) (remand solely for calculation of benefits warranted where the record provided

persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose). That is, it is not clear that Plaintiff would have been found disabled if the ALJ had properly complied with *Lockwood*. Accordingly, the Court remands the matter for further administrative proceedings.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 5) for judgment on the pleadings is granted, and Defendant's cross-motion (ECF No. 6) for the same relief is denied. This matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order pursuant to sentence four of 42 U.S.C. § 405(g).

So Ordered.

Dated: Rochester, New York
       March 22, 2023

ENTER:

CHARLES J. SIRAGUSA
United States District Judge